### HIGGINS v. HERRMANN.

(Supreme Court, Appellate Division, First Department. December 10, 1897.)

BILLS AND NOTES—CONSIDERATION.

    Defendant's husband was indebted to a bank of which plaintiff was receiver, on notes for which plaintiff recovered judgments. Under an order of the court, plaintiff made an agreement with defendant, to assign the claim and judgments to her on payment of a certain amount in installments. It was provided that, if she failed to carry out the agreement, plaintiff would transfer to her notes and judgments to the amount which she should have paid. She delivered to him 10 checks, drawn to her order by her husband, and indorsed by her to plaintiff. In an action against her on eight of these checks, it was agreed that they were given without consideration to defendant, except that they were intended as a payment under the agreement, and that no notes or judgments had been assigned to defendant. *Held,* that the checks were based on a sufficient consideration.

Action by Francis Higgins, receiver of the North River Bank of the City of New York, against Adelaide Herrmann. There was a verdict for plaintiff, subject to the opinion of the appellate division. Judgment on the verdict.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Benjamin Yates, for plaintiff.
Benjamin Steinhardt, for defendant.

INGRAHAM, J.    The action was brought to recover the amount of eight checks, of $250 each, drawn on the Garfield National Bank by one Alexander Herrmann to the order of this defendant, and indorsed by her.    Upon the trial an agreed statement of facts was presented, upon which the court directed a verdict for the plaintiff, subject to the opinion of this court.    The only question presented is as to whether there was a good consideration for these checks. It appeared that Alexander Herrmann, the maker of the checks, was indebted to the North River Bank upon certain promissory notes, aggregating upward of $17,000, upon which judgment was obtained against him by the plaintiff as receiver; and that upon an application by the receiver an order was entered by which the receiver was authorized to sell and assign the claim against the said Herrmann for the sum of $5,500, to be paid in six separate payments, with a provision that the notes upon which the judgment had been obtained were not to be delivered, and the said judgment or judgments should not be assigned, until the full sum of $5,500 had been paid, and in the event of a failure to pay the said sum of $5,500, or any part thereof, the agreement was to be terminated, and any sum or sums theretofore paid thereon to be forfeited for the failure of the performance thereof.    In pursuance of this order, the plaintiff, as receiver, entered into an agreement with the defendant, reciting the indebtedness of the said Alexander Herrmann, the order of the court authorizing the sale of the notes made by Herrmann, and the judgments recovered thereon.    By such agreement the plaintiff, in consideration of the sum of $5,500, to be paid as thereinafter provided, agreed to sell, assign, and transfer to the defendant, upon the payment of the said sum of $5,500, the promissory notes of the said Herrmann and the judgments recovered by the plaintiff against him. The agreement further provided that the plaintiff should, upon the receipt of the amounts stated, deliver to the defendant the said notes made by Alexander Herrmann and assignments of the judgments recovered against him; and, "in the event of the party of the second part failing to carry out this agreement and make the payments as hereinbefore provided, that this agreement shall be deemed terminated, and the party of the first part will transfer and assign to the party of the second part notes and judgments to the amount paid under this agreement."    By the agreed statement of facts it is stated that about the 1st of December, 1896, the defendant indorsed and delivered to the plaintiff, in payment of the sum of $1,000, due December 1, 1896, and of the sum of $1,500, due January 1, 1897, 10 checks, each for the sum of $250, drawn on the Garfield National Bank, signed A. Herrmann, to the order of the defendant, dated, respectively, December 9, 1896, December 16, 1896, December 23, 1896, December 30, 1896, January 6, 1897, January 13, 1897, January 20, 1897, January 27, 1897, February 3, 1897, and February 10, 1897, and that checks dated December 9 and 16, 1896, were paid, but that the other checks were not paid at maturity, and were duly protested for nonpayment, of which the defendant had notice; that the plaintiff has not delivered any transfer and assignment of the notes and judgments referred to in the said agreement, and that the defend-

ant never requested or called for a delivery of any transfer and assignment of the same; and that the checks in suit were given by the defendant to the plaintiff without the defendant receiving any consideration therefor, or the plaintiff parting with anything for the same, save and except they were intended as a payment under the agreement with the parties.

We think that there was a good consideration for these checks. Upon the execution of this agreement the defendant was bound to pay to the plaintiff the sum of $5,500, as specified in the agreement. There was an express covenant on the part of the defendant to pay this sum, and in consideration of such payment the defendant was to receive an assignment of the notes and judgments against her husband, who was the maker of these notes. Although the agreement as printed provides that "the party of the first part hereby covenants and agrees to pay the sum of $5,500, as follows," it is quite evident that this was a clerical mistake, and that it was thereby intended to bind the party of the second part to make such payments; for the whole contract provides for the receipt of this sum of money by the party of the first part, the plaintiff, from the defendant, and upon payment by the defendant of that sum the plaintiff was to transfer to her the notes and judgments mentioned. As a performance of that agreement, and as a discharge of that obligation, the defendant delivered to the plaintiff these checks in suit; and their delivery, as expressly stated in the agreed statement of facts, was intended as payment under the agreement between the parties. The title to these notes and judgments vested in the plaintiff as receiver, and, under the agreement between the plaintiff and the defendant, the plaintiff agreed to sell, and the defendant to buy, the notes and judgments. Payments were to be made as specified in the agreement, but the parties were at liberty to change the method of payment, and the plaintiff could accept payment of the amount of the consideration at different times or in a different method than that provided for by the agreement. The agreement provided that the money should be paid upon certain fixed dates. As a compliance with that obligation, the plaintiff accepted, instead of the money which he was entitled to receive, these checks indorsed by the defendant. The form of the statement of facts precludes us from assuming that the checks were given as a mere method of obtaining the payment of a sum of money which the agreement provided should be paid to the plaintiff, but the checks were given and accepted with the intention that they were to be a payment under the agreement; and, having been given and accepted with such intention, the obligation in the agreement was satisfied by the receipt of the checks, and the obligation of the defendant to pay to the plaintiff the amount represented by these checks was satisfied. Upon the acceptance by the plaintiff of these checks as payment, the defendant became entitled to a transfer of the notes or judgments. It is not necessary to consider whether or not the receiver could have resisted a demand by the defendant to transfer that judgment or notes to the amount of the checks in case the checks were not paid. But it seems to me, however, that if, after receiving these

checks as a part payment under the agreement, the receiver had attempted to enforce their payment, had sold or transferred them to others, or had exercised any act of dominion over them, he would then have been clearly liable to transfer to the defendant, under the agreement, the notes or judgments to the amount for which he had received these checks. This is not a case of a debtor paying to a creditor an amount less than the conceded indebtedness, under an agreement that such less amount should be received in full satisfaction of the creditor's claim, where the question is presented as to the validity of the agreement made by the creditor to receive a less amount than that due him. In that case, the question is not as to the validity of the payment to the creditor, but whether there is any consideration in the payment of the amount which is due to sustain the agreement of the creditor to receive such less amount in full satisfaction of his claim. Here the question is whether the act of the debtor in making a payment to the creditor, under an agreement by which the creditor is to pay a sum of money at a specified time, is invalid, or without consideration, because the property transferred to the creditor in satisfaction of the obligation to pay is something different from that which by the agreement the creditor agreed to accept. Nor does the provision in the agreement that, in case the defendant (the party of the second part) should fail to carry out the agreement and make the payment, the agreement should be terminated, affect the validity of these checks; for, in the first place, the defendant did not fail to make the payment of the sum represented by these checks, but, on the contrary, it is agreed that the checks were given in payment of these two sums to be paid under the agreement. But, if this were not so, this specific obligation assumed by the defendant, in indorsing these checks delivered to the plaintiff in compliance with her obligation to pay these two sums of money, was not affected by the terms of the agreement relating to the obligation under the agreement upon the contingency of a failure to pay the sums of money therein provided. The plaintiff sues upon the checks, not to enforce the agreement, and, if there was a sufficient consideration to sustain the obligation assumed by the defendant to the plaintiff by the indorsement and delivery of these checks, the right of the plaintiff to enforce the payment of these checks presents an entirely different question from the right of the plaintiff to enforce the agreement in case the checks had not been given. The question is, was this obligation imposed upon the defendant by the indorsement and delivery of the checks a valid obligation of the defendant to the plaintiff? It would be clearly such an obligation if there was a consideration for it. There was a good consideration, as there was the obligation of the defendant to pay to the plaintiff this sum of $5,500; and upon the acceptance of the checks by the plaintiff, with the intention of accepting them in payment of such obligation, the right of the plaintiff to enforce these checks against the maker and indorser at once arose. Nor does the fact that the date at which the checks became payable is different from that provided for in the agreement as to the time when the money under the agreement should be paid at all affect the obligation of the defendant. The plaintiff did not acquire its title to these notes or judgment by virtue of the order

of the court authorizing it to sell. Before that order was granted, these notes and judgments had vested in the receiver; and in the discharge of his duty as such receiver he was required to collect the notes and judgments, or, if they were not collectible, to dispose of them to the best interest of the estate of which he was receiver. The application to the court for instruction, and this order entered thereon, was merely an authority to the receiver to do what he had the power to do under his general appointment, and its only effect was to protect him against any claim that could be made against him by the creditors or the corporation of which he was receiver that the discretion of the power vested in him had not been properly exercised. If that order had not been granted, he had the power to sell the notes or judgments upon any terms that he saw fit, and a transfer by him of such notes or judgments would have vested the title in the transferee, although the terms were different from those authorized by the court. His responsibility to the creditors for his neglect strictly to follow the permission which he had received from the court in respect to these notes and judgments would not affect the validity of his act in disposing of them; and his responsibility to the creditors for accepting these checks, instead of the cash under the agreement, is not affected by the fact that, as between the receiver and the defendant, the receipt of those checks as a payment under the contract was binding upon both parties to the contract, except so far as it might justify a claim of the creditors that he was responsible for any loss occasioned to the estate because of his acceptance of the checks instead of the money. Under the agreement between the parties, $1,000 was to be paid on December 1, 1896, and $1,500 on January 1, 1897. By the agreed statement of facts, it appears that on December 1, 1896, instead of compelling the defendant to pay this sum of $1,000, he accepted these 10 checks, the first payable December 9, 1896, and the last payable January 10, 1897, as a payment of the two sums which were payable on December 1, 1896, and January 1, 1897, respectively. It is quite clear that the receiver could not, on December 1, 1896, after the receipt of these checks, have sued the defendant to recover the sum of $1,000 payable on that day; and, even assuming that these checks had not been given in payment of that obligation, the fact that the right of the receiver to sue for the $1,000, or to declare the contract abrogated on the 1st day of December, on account of the nonpayment of that sum of money on that day, and a postponement of that right until the day on which the checks were payable, would be a perfectly good consideration for the indorsement and delivery of these checks. We think it entirely clear that these checks were valid obligations in the hands of the receiver; that they were based upon a sufficient consideration; and that the verdict in favor of the plaintiff was proper.

Judgment is therefore ordered for the plaintiff upon the verdict, with costs. All concur.